## MIDDLETON v. NATAL

———

(October 29, 1928. Opinion and Decree.)
(December 10, 1928. Rehearing Refused.)
(January 29, 1929. Writ of Certiorari and
Review Denied by Supreme Court.)

———

Chas. J. Larkin, Jr., of New Orleans, attorney for plaintiff, appellee.

Alex W. Swords, of New Orleans, attorney for defendant, appellant.

JANVIER, J. Plaintiff sued defendant for $618.75 with 6% interest from October 23, 1925, until paid, together with attorney's fees at 10% on the whole amount claimed to be due.

The suit is based on a note dated October 23, 1925, payable October 23, 1926, for

the sum of $825.00, and on which $206.25 had been paid on account.

Defendant answered, admitting, the execution of the note and the payment on account and admitting also, the payment in cash at the time of the execution of the note of $275.00, but denied his liability to pay the balance, setting up as a defense that the note was given in connection with an agreement made between himself and the plaintiff, which agreement, we now set forth in full:

AGREEMENT FOR DEED.

This AGREEMENT, Made and entered into this twenty-third day of October, A. D., 1925, by and between F. A. Middleton, of New Orleans, La., Party of the First Part, and D. Natal of New Orleans, La. Party of the Second Part.

WITNESSETH, That if the Party of the Second Part shall first make the payments and perform the covenants hereinafter mentioned on his part to be kept and performed by said Second Party, the said Party of the First Part hereby covenants and agrees to convey and assure unto the said Party of the Second Part _____ free and clear of all encumbrances whatsoever, except taxes, assessments, and impositions levied after the date hereof, any public rights in any highway adjacent to said premises or zoning or restrictions by public authority, by a good and sufficient warranty deed, accompanied by a merchantable abstract of title or merchantable copy thereof, all that certain lot, piece or parcel of land situated in the County of Orange, State of Florida, and described as follows, to-wit:

Lots 4-5, Block C, of Valencia Park, according to plat thereof recorded in Plat Book —, Page —, Records of Orange County, Florida.

And the said Party of the Second Part covenants and agrees to pay to said party of the First Part, at 505 Canal Commercial Bank Building, New Orleans, La., the sum of ELEVEN HUNDRED ($1100.00) Dollars, lawful money of the United States of America, in manner following: that is to say, $275.00, Two Hundred Seventy-Five Dollars cash, the receipt whereof is by ex-

ecution and delivery of this contract acknowledged, and the balance of EIGHT HUNDRED TWENTY-FIVE ($825.00) Dollars, as follows: said party of the second part has furnished a certain note due October 23rd, 1926, upon which said note the said party of the second part agrees to pay on the 23rd day of each month, beginning November 23rd, 1925, the sum of $68.75, and the failure to pay any one of said installments upon said note thirty days after its maturity shall make said note at once due and payable for the full amount.

And the said Party of the Second Part hereby covenants to make such payments of principal and interest when the same shall by the terms hereof become due and payable, and to pay all taxes, assessments or impositions that may be legally levied or imposed upon the premises hereinbefore described after the date hereof.

And it is further covenanted and agreed by and between the parties hereto that in the event of the failure of the said Party of the Second Part to make either of the payments of principal or interest, or any part thereof, or to perform any other covenant on the part of the Party of the Second Part hereby entered into, and by the Second Party to be kept and performed, for the period or space of thirty days, then the Party of the First Part may at its option and without notice of any kind whatsoever immediately declare all principal and interest due hereunder, as immediately due and payable, without notice except such as may be required by law; and in the event of any litigation arising from the default of the said Party of the Second Part, the said Party of the Second Part agrees to pay all cost of such proceedings, including as a part of such cost a reasonable attorney's fee.

The above described property is sold, under and subject, nevertheless, to the following conditions and restrictions, the acceptance of which form a part of the valuable considerations for this conveyance, to-wit:

First: That the above described lot is hereby designated as a residence lot, and that no building shall be erected upon the front part of the above described premises which shall cost less than $4,000. All such buildings shall

be painted within thirty (30) days after erection, and shall be kept neatly painted.

Second: That no building shall be erected upon any part of the above described premises so that any portion thereof shall be nearer than eighteen (18) feet to the front street property line of said premises; nor nearer than ten (10) feet to the side property line where any street constitutes said property line; or nearer than five (5) feet to any other inside property line.

Third: That there is hereby reserved over, under and/or across the rear on the back end of the above described property, an easement five (5) feet in width, for the purpose of constructing and maintaining sewer mains, water mains, gas mains, and/or electric light or telephone conduits, and a building shall never be erected or encroach upon any portion of said easement or reservation.

Fourth: That septic tanks of general design approved by the Florida State Board of Health, shall be erected, constructed and maintained on such property by the party of the second part, his heirs or assigns, of sufficient capacity to take care of the sewerage and waste of the building or buildings erected thereon.

Fifth: That the said party of the second part, his heirs and assigns, are restricted and prohibited for the period of ninety-nine years from the date hereof from selling, conveying, leasing, letting or otherwise granting the said described property or any interest or use therein or thereof to any person or persons other than Whites or Caucasians.

IN WITNESS WHEREOF, The parties hereto have hereunto set their hands and seals the day of year first above written.

Signed, sealed and delivered in the presence of:

Signed M. Middleton.

　　　　　Signed F. A. Middleton (Seal)
　　　　　Signed D. Natal 　　　　(Seal)

The defendant contends that this agreement contains the potestative condition.

The part of the contract to which our attention is particularly directed reads as follows:

"That if the party of the Second Part shall first make the payments and perform the covenants hereinafter mentioned on his part to be kept and performed by said Second Party, the said Party of the First Part hereby covenants and agrees to convey and assure unto the said Party of the Second Part, etc."

It is argued that plaintiff is in no manner bound unless and until defendant shall have first paid the full amount of the note; that until that time plaintiff was and is free to do with the property as he may wish.

True enough, he was in no manner bound to deliver the property to defendant unless and until the note was paid, but in the meantime and pending that payment, defendant was absolutely bound to retain title to and possession of the property, so that he would be in position to deliver title and possession thereof upon payment of the note, or to respond in damages in the event of his failure to do so.

This is plainly different from the case where one person says to another: "If you pay me so much money by a certain time, I will sell you my property." In such a case neither is obligated in any way. But in the case before us the parties went beyond that stage. Middleton said to Natal: "If you pay me $1,100.00 by next October 23rd, I will deliver you the title to my property." If the negotiations had ended at that point, there would have been no contract. But they did not stop there. Natal answered: "I will take the property at that price and here is my note evidencing my obligation to pay, here is my payment on account, and here is our contract." In other words, the offer or option was closed by acceptance, by pay-

ment on account and by execution of a note for the balance of the purchase price. From this point either party could maintain an action for specific performance or for damages.

Our attention is called to Barber Asphalt Paving Company vs. St. Louis Cypress Company, 121 La. 152, 46 So. 193, in which it was said: "A so called conditional sale, or sale by which the vendee is to become unconditionally bound for the price and the vendor is to continue to be the owner of the property, until the price is paid, is not possible under the laws of this State."

In the case presented, that situation does not exist, as the parties have bound themselves, mutually—one to buy, the other to sell; each is unconditionally obligated. So far as this case is concerned the Barber case is authority merely for the proposition that in cases involving sales or proposed sales, the promise or obligation on one side must be of equal weight with the promise or obligation on the other; that is to say, you cannot have a promise to sell on one side and a complete purchase on the other. A promise to sell must be balanced by a promise to buy and a purchase must be balanced by a sale.

We do not believe that the contract before us should be construed as a conditional sale, but rather as an accepted offer or option. To use the very language of the Court in the Barber Asphalt case: "A and B may agree that if A pays B so much money by such a day, A will become owner of the property. But such an agreement is not a contract; it is not binding upon either party. If A wishes to make it binding upon B, he must buy from B an option. If the parties bind themselves mutually to buy and sell, there is a promise of sale." . As Judge Provosty said in that case, "If A and B agree that

if A pays B so much money by such a date A will become the owner of the property, that is not a contract." But to follow his reasoning, if A says I will pay you so much money and here is a payment on account and here is my note for the balance payable on that date, when B accepts the payment on account and the note for the balance, each becomes unconditionally bound and the potestative conditon, if it ever existed, is superceded by a binding unconditional agreement.

We cannot agree with defendant that the case of Heeb vs. Codifer and Bonnabel, 162 La. 139, 110 So. 178, is an authority for the proposition but these "bond for deed" contracts are void or voidable as containing the potestative condition. On the contrary that case and many others recognize the validity and binding effects of such contracts. The point involved in the Heeb vs. Codifer, etc., case and in several others was what was the rights of the parties against each other after a breach?

As to tender we believe that plaintiff has done all that could be required of him. He cannot be expected to deliver title, without receiving payment any more than he could expect payment without delivering title. The one is as necessary as the other and neither could be said to be required to be performed first. Defendant has all along indicated an unwillingness to take title and rejected it when it was tendered in open court.

We are constrained to suggest that the result may have been different had the value of Florida land in recent years gone up instead of down.

For these reasons it is ordered, adjudged and decreed that the judgment appealed from be affirmed at the cost of appellant.

---

WESTERFIELD, J., dissenting.

As I see it this case can not be distin-

guished in principle from that of Barber Asphalt Paving Company vs. St. Louis Cypress Company, 121 La. 152, 46 So. 193. In the cited case the Court, after observing that parties were free to make such contracts as they pleased but not impossible contracts and that in this State a mortgage can not be created on movable property (prior to adoption of chattel mortgage act) and that they can not in any state, make a sale which shall not transfer ownership or make a vendee responsible for the price before there was a sale, or make a contract without mutuality of obligation, held on page 167 (46 So. 198):

"And it is for this last reason that the present contract cannot be enforced as a mere innominate contract. Unless the one party transfers the things, there is nothing for which the other party can bind himself to pay money. The one obligation is the juridical cause of the other. If the one party merely promises to sell, the other cannot actually buy, but can only promise to buy; and, so long as he does not actually buy, he cannot owe money. True, our Code says (article 2462) that a promise of sale amounts to a sale; but, by a settled jurisprudence, this means no more than that the contract is susceptible of specific enforcement. Girault vs. Feucht, 117 La. 276, 41 South. 572. It does not mean that the buyer becomes owner of the property, or debtor for the price. Baldwin vs. Morey, 41 La. Ann. 1105, 6 South. 796, and cases there cited. In a case like the present, the owner either parts with the ownership, i. e., makes a sale; or he promises to part with it upon payment of the price, i. e., makes a promise of sale. In the former event he ceases to be owner, since a sale is a transfer of ownership; in the latter event, he does not cease to be owner, but the other party does not become his debtor for money—because the corresponding obligation to a promise to sell is a promise to buy; and so long as one merely promises to buy, the only obligation incurred is that of having to buy; and not that of having bought, or, in other words, of having to pay money. Of course, one can stipulate a money penalty by way of sanction to a promise to buy; but such a stipulation would be an accessory contract to the promise to buy—that is to say, would be an entirely different contract from the one entered into in the present case. Of course, also, one can sell, or buy, an option to buy; but, again we say, this would be a different kind of contract from the one involved in the instant case."

The case before us presents all of the features referred to by Justice Provosty in the cited case as objectionable. There is here no sale but only an agreement to buy and sell which unconditionally binds the vendee and only conditionally obligates the vendor. The note sued on represents a part of the purchase price of the property without there having been any sale, the plaintiff vendor still retaining title to the property.

For the above reasons I respectfully dissent.